**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL J. BRUDNAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 09-1304 |
| | ) | |
| PORT AUTHORITY OF | ) | |
| ALLEGHENY COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

I. **INTRODUCTION**

Pending before the court is the motion for summary judgment (ECF No. 39) filed by the

Port Authority of Allegheny County ("defendant" or "Port Authority") seeking judgment as a

matter of law pursuant to Federal Rule of Civil Procedure 56 against Michael J. Brudnak

("plaintiff" or "Brudnak") with respect to all claims asserted in plaintiff's complaint (ECF No.

1.)  Plaintiff's claims are asserted under the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and

the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), alleging unlawful

discrimination and retaliation in the workplace.  This court exercises subject-matter jurisdiction

over plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and

over plaintiff's state claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).  For the

following reasons, defendant's motion for summary judgment will be GRANTED.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff began working for the Port Authority of Allegheny County (the "Port Authority") in June 1999.  (Joint Statement of Material Facts of the Parties (ECF No. 49) ("J.S.") at 2.)  He was a member of Local 85, Amalgamated Transit Union.  The union had a collective bargaining agreement with the Port Authority that governed the terms of plaintiff's employment.  (Id.)  The collective bargaining agreement required an employee such as plaintiff to bid on jobs available within the Port Authority if he or she wished to transfer.  The jobs were awarded based upon a seniority system.  (Id.)

Plaintiff initially worked as a garage attendant following his hiring.  (Id.)  Between 1999 and 2004, plaintiff bid back and forth between the positions of garage attendant and wheel changer.  (Id.)  Plaintiff's primary position after 2004, and immediately prior to his termination, was as a wheel changer.  (J.S. at 2, 12.)  He also spent brief periods following 2004 doing light duty work, i.e., working as a vehicle cleaner.  (Id.)  The light duty work, however, followed periods of plaintiff being off the job due to a need for physical therapy and a surgical procedure on his right shoulder.  (Id.)

As a wheel changer, plaintiff worked at the Port Authority's Collier Garage, approximately forty hours per week, typically between 7:00 a.m. and 3:30 p.m.  (J.S. at 5.)  His duties included physically inspecting and changing tires on the Port Authority's bus fleet.  (Id.)  When a tire needed to be changed, plaintiff used a sixty-pound air gun to loosen the bolts holding the tire.  (Id.)  He would then dislodge the tire from the bus by hitting it with a sledgehammer.  (Id.)  These tools were not required to perform any other tasks essential to plaintiff's position.  (Id.)  Each tire weighed approximately two hundred and sixty pounds, and plaintiff would need to wheel the tire around the garage for service and repair before placing the tire back onto the

bus.  (J.S. at 6.)  He would change anywhere from twenty-four to thirty-six tires during every shift.  (Id.)

The Port Authority maintained a Drug and Alcohol Policy and a Performance Code, both of which governed the terms of plaintiff's employment.  (J.S. at 3-4.)  The policies dictated how drug testing was performed, under what circumstances it was performed, and the consequences of failure to pass a test.  (Id.)  Plaintiff received, and was aware of, these policies upon beginning his employment with the Port Authority.  (J.S. at 4-5.)  Plaintiff's job as a wheel changer was classified by Port Authority policy as a "safety sensitive position," and plaintiff was aware of this classification.  (J.S. at 5.)  Such a position is subject to random drug and alcohol testing.  (Id.)

While working as a wheel changer on February 28, 2003, plaintiff was subject to a random drug test.  (J.S. at 6.)  On March 4, 2003, plaintiff's test sample returned positive results for the presence of a prohibited drug.  (Id.)  A disciplinary hearing was conducted on March 6, 2003 – pursuant to Port Authority policy – and plaintiff was to submit for an evaluation by a substance abuse professional.  (J.S. at 7.)  On March 12, 2003, plaintiff again attended a required disciplinary hearing, at which time the Port Authority agreed to reinstate plaintiff if he signed an "Agreement for Reinstatement and Conditions of Continued Employment for Employees" ("Last Chance Agreement" ("LCA")).  (Id.)

The LCA stated that in order to retain his employment, plaintiff was to remain free of drugs and alcohol for the duration of his time with the Port Authority.  (Id.)  Failure of another test could result in further discipline, including termination.  (Id.)  In addition to any drug testing already required by his safety sensitive position, plaintiff was required to submit to additional drug testing for purposes of monitoring compliance with the LCA.  (Id.)  Plaintiff was also to follow and complete a recommended aftercare treatment/rehabilitation plan, and provide the Port

Authority with documentation thereof. (J.S. at 7-8.) Failure to follow any LCA terms could result in discipline or termination. (J.S. at 7.) Plaintiff was cleared to return to work by Port Authority's contracted physicians ("Concentra") on March 5, 2003, after completing a rehabilitation program. (J.S. at 8.) On May 8, 2003, plaintiff returned to work. (Id.)

On May 6, 2004, plaintiff reported to the Port Authority that he had injured his right shoulder after swinging a sledgehammer to remove a tire from one of the authority buses. (Id.) He did not receive medical attention, and did not feel that the injury was serious. (Id.) By September 10, 2004, however, plaintiff had reported a second injury to his shoulder following the same type of activity. (Id.) A Concentra physician ordered an x-ray, but did not find any injury. (Id.) Nonetheless, plaintiff was placed on temporary light duty, requiring no lifting over ten pounds, pushing or pulling over fifteen pounds, or reaching above shoulder level, and plaintiff was instructed to engage in physical therapy. (Id.) Plaintiff returned to work on September 14, 2004 in the light duty vehicle cleaner position. (J.S. at 9.) Plaintiff was required to clean the inside of the authority's buses at the Collier Garage. (Id.) Plaintiff acknowledged his new duties by signing a list of expectations and requirements for light duty employees. (J.S. at 10.) The vehicle cleaner work hours began at approximately 10:00 p.m. and ended around 6:30 a.m. (J.S. at 9.) Plaintiff continued to work forty hours per week, and his pay did not change. (Id.)

After a brief period of time, plaintiff was cleared to return to the wheel changer position by a Concentra physician. (J.S. at 10.) Plaintiff returned to the wheel changer position on September 22, 2004. (Id.) Between that time and November 22, 2005, plaintiff contacted Concentra physicians on five occasions to complain about right shoulder pain experienced when operating the air gun and sledgehammer. (Id.) It was again recommended that plaintiff return to

light duty work and engage in physical therapy. (Id.) Plaintiff did neither, because he did not

prefer the vehicle cleaner schedule and he did not wish to use his personal time to go to physical

therapy. (J.S. at 11.)

Plaintiff instead sought an outside opinion on his shoulder injury. (J.S. at 12.)

Orthopedic surgeon, Dr. Jon Tucker, evaluated plaintiff's condition and concluded that surgery

was required to repair plaintiff's shoulder. (Id.) Plaintiff was placed on disability leave on

November 22, 2005, and following his surgical procedure, was unable to work until January 17,

2006. (Id.) Dr. Tucker released plaintiff to return to light duty work on January 23, 2006, and to

regular duty on April 25, 2006. (J.S. at 13.) At that time, plaintiff returned to work in the wheel

changer position. (Id.) Plaintiff worked that position alongside co-worker Joe Danalo through

July 2007. (Id.) Mr. Danalo had bid for plaintiff's open wheel changer position while plaintiff

was on disability leave. (Id.) Mr. Danalo later transferred after bidding for another open

position. (Id.)

Despite receiving assistance from Mr. Danalo in the performance of his job duties,

plaintiff wished to leave the wheel changer position after approximately one week. (J.S. at 13-

14.) Plaintiff felt that the job was too difficult, and requested that Kirsten Fadelle – a Port

Authority employee responsible for identifying positions open for bidding – disqualify plaintiff

from eligibility for the wheel changer position. (J.S. at 14.) Plaintiff felt that his age and

shoulder condition made performance as a wheel changer impossible. (Id.) Ms. Fadelle

informed plaintiff that he could not disqualify himself, and that if he wished to transfer to

another position, he would have to bid according to the collective bargaining agreement. (J.S. at

14-15.) Despite having an opening, plaintiff did not bid for a position as a garage attendant due

to a lower pay rate and less desirable hours. (J.S. at 15.) Plaintiff also refused to return to light

duty vehicle cleaner work offered by the Port Authority, because of the less desirable hours. (Id.)

Plaintiff remained voluntarily in the wheel changer position. (J.S. at 16.) On September 3, 2007, he was required to submit for a random drug and alcohol screening. (Id.) Plaintiff tested positive for cocaine. (Id.) A disciplinary hearing was conducted on October 2, 2007, at which time he was found to be in violation of his LCA and relevant Port Authority policies, and was terminated. (Id.) Plaintiff appealed the termination, claiming that the testing company had a questionable chain of custody – thereby implicating the reliability of the test results. (J.S. at 17.) At an arbitration hearing between the Port Authority and plaintiff's union, it was agreed to allow plaintiff another chance under a new LCA. (Id.) The LCA was signed, and plaintiff was reinstated on March 25, 2008. (Id.) As with the original LCA, subject to further discipline or termination, plaintiff was required to participate in treatment with substance abuse professionals, remain abstinent from the use of drugs and alcohol, and agree to submit to drug tests beyond those required for his position. (J.S. at 17-18.)

Plaintiff completed treatment, submitted to a physical evaluation and was cleared to return to work as a wheel changer on May 22, 2008. (J.S. at 18.) Upon his return to work, plaintiff informed his foreman that due to his age and shoulder condition, he may be unable to perform all the required functions of his position. (Id.) The foreman told plaintiff that if an activity was causing him pain, he should stop. (Id.) Plaintiff was advised to tell his foreman if he required help performing his job. (Id.) Subsequently, plaintiff only did the work he felt able to do, and was never asked to do more by the Port Authority. (J.S. at 19.)

A random drug screening was conducted on August 18, 2008, at the Collier Garage, and plaintiff's sample returned positive results for the presence of cocaine on August 20, 2008. (J.S.

at 19-21.)  Plaintiff requested a retest, which was administered, and which also returned positive results for the presence of cocaine.  (J.S. at 21.)  Each of plaintiff's samples had been independently tested at different facilities.  (<u>Id.</u>)  A disciplinary hearing was held on September 17, 2008, at which point plaintiff was found to be in violation of his latest LCA, as well as applicable authority policies, and was terminated.  (J.S. at 21-22.)  Plaintiff questioned the validity of these test results, due to errors in documentation kept by the testing companies.

Following his termination, plaintiff timely cross-filed charges with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  (ECF No. 1 at 2; ECF No. 5 at 2.)  He also applied for social security disability benefits in October 2008, claiming an inability to engage in full-time employment of any sort.  (J.S. at 23.)  Within ninety days of receiving a right to sue letter from the EEOC, plaintiff filed a complaint in this court on September 23, 2009.  (ECF No. 1 at 2; ECF No. 5 at 2.)  The Port Authority's answer was filed on December 4, 2009.  (ECF No. 5.)  In September 2010, plaintiff was awarded disability benefits from the Social Security Administration – benefits which he collects to this day.  (J.S. at 23-24.)  On November 2, 2011, the Port Authority filed its present motion for summary judgment.  (ECF No. 39.)  The matter has been fully briefed.

**III.  STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides in relevant part:

**(a.) Motion for Summary Judgment or Partial Summary Judgment.**

A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.    The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

…

**(c) Procedures.**

**(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1).

Rule 56 of the Federal Rules of Civil Procedure

"mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); s*ee Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23). The United States Supreme Court emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts . . . . Where the record
> taken as a whole could not lead a rational trier of fact to find for the
> nonmoving party, there is no 'genuine issue for trial.'"

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. *Doe*, 242 F.3d at 446; *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## IV.    DISCUSSION

In his complaint, plaintiff makes a series of discrimination and retaliation claims based upon his age and alleged disability. (ECF No. 1 at 8.) In count I, plaintiff alleges that the Port Authority violated the ADA by failing to accommodate his "disability/perceived disability," specifically, his right arm pain. (ECF No. 1 at 8-10.) At count II, plaintiff argues that the Port Authority violated the ADEA by terminating him because of his age, and by filling his position with a younger worker. (ECF No. 1 at 10-13.) Finally, at Count III, plaintiff believes that the Port Authority violated Title VII provisions pertaining to hostile work environment and retaliation, because plaintiff allegedly suffered discriminatory treatment as a result of requesting accommodations and appealing his terminations.[1] (ECF No. 1 at 13-15.) In its motion for

---

[1]    Plaintiff claims that the Port Authority's actions constituted a violation of Title VII, but does not actually make a cognizable claim under Title VII pertaining to race, color, religion, sex, or national origin. *See* 42 U.S.C. §

summary judgment, the Port Authority asserts that it is entitled to judgment as a matter of law with respect to all the counts in plaintiff's complaint, because plaintiff allegedly failed to meet the evidentiary burdens required by his claims. (ECF No. 40.)

A. *ADA Claims*[2]

1. Failure to Accommodate

Based upon plaintiff's brief in opposition, his ADA claim alleging a failure to accommodate may be summarized as follows: neck and back pain stemming from a past job-related injury rendered plaintiff disabled as a result of limitation in the major life activity of working, the Port Authority was made aware of plaintiff's disability, and the Port Authority failed to make adequate accommodation for plaintiff's disability. (ECF No. 44 at 2-3.) In its motion for summary judgment, the Port Authority argues that, despite his allegations, plaintiff failed to carry his prima facie burden of establishing a failure to accommodate. (ECF No. 40 at 3-15.)

The ADA mandates that no covered employer shall "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make a prima facie showing of discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of

2000e-2(a). Therefore, the court will consider plaintiff's claims regarding hostile work environment and retaliation under applicable ADA and ADEA statutes, regulations, and case law.

[2]      The ADA was amended in 2008, and the amendments took effect on January 1, 2009. It has not been held, and the parties did not argue, that the amendments are retroactive to the dates of the events in the present case. *Sulima v. Tobyhanna Army Depot*, 602 F. 3d 177, 185 n.2 (3d Cir. 2010); *Colwell v. Rite Aid Corp.*, 602 F. 3d 495, 501 n.5 (3d Cir. 2010). As such, references in this opinion are to the statutes or regulations as they existed at the times of the pertinent events in this case.

discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F. 3d 177, 185 (3d Cir. 2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 306 (3d Cir. 1999)).

The Port Authority attacks plaintiff's ability to substantiate his claim of failure to accommodate at the first and third prong of the prima facie standard. (ECF No. 40 at 3.) In order to demonstrate disability under the first prong of the prima facie standard, a plaintiff must show that he or she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Sulima*, 602 F. 3d at 185 (citing 42 U.S.C. § 12102(2)). More specifically, the plaintiff must provide evidence of an impairment, identify the life activity limited by the impairment, and prove that the limitation is substantial. *Colwell v. Rite Aid Corp.*, 602 F. 3d 495, 501 (3d Cir. 2010). A plaintiff may also establish the first prong by providing evidence showing that his employer regarded him or her as having an impairment. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F. 3d 751, 762 (3d Cir. 2004).

Plaintiff claims that he meets this prong based upon his personal accounts regarding neck and back pain, numbness, and loss of strength due to job-related injury, and his subsequent complaints to the Port Authority. (ECF No. 44 at 3; ECF No. 46-1 at 81.) He relies upon his personal testimony that he could not perform the essential functions of his job as a wheel changer without accommodation – specifically, without the assistance of a helper. (ECF No. 44 at 3; ECF No. 46-1 at 78, 89.) Plaintiff attempts to support his contentions with letters from his doctors to the Port Authority regarding the degree of his physical limitations at work. (ECF No. 44 at 3; ECF 46-4 at 2-3, 10-11, 12-13, 17, 28.) The Port Authority counters that plaintiff provided no evidence that his pain precluded him from performing any type of work, and that the evidence shows that he was not only working until the date of his termination, but his doctor's notes cleared him for regular duty without restrictions. (ECF No. 40 at 5-6.)

Viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the court must find that there is not a genuine issue of material fact about whether he was disabled according to the ADA. Plaintiff presented evidence of surgery on his right shoulder occurring while he worked for the Port Authority in November 2005. (ECF No. 46-4 at 2-3, 10-11.) Plaintiff testified that his doctor did not believe that he could return to his former position without help, because his injuries – even after treatment – precluded him from performing his essential job functions without assistance. (ECF No. 46-1 at 71, 72, 78.) Plaintiff averred that his physician had spoken with Port Authority supervisors to inform them of his inability to work as a wheel changer without a helper. (ECF No. 46-1 at 71, 72, 78.) Plaintiff, however, provided no evidence to back these assertions.

The record shows that plaintiff's own physician indicated that he was able to return to work without any difficulty following his shoulder surgery. (ECF No. 46-4 at 10.) Although plaintiff contended that he was to have an assistant help him with his job functions, he was eventually able to transition from his surgery back into his position as a wheel changer. (ECF No. 46-1 at 78-80.) Despite his allegations of pain and the removal of his helper, plaintiff never stopped working as a wheel changer except when he was undergoing surgery, and immediately afterward when he was relegated to light duty work. (ECF No. 46-1 at 82; ECF No. 46-3 at 7.) Plaintiff rejected easier positions, and continued to work as a wheel changer. (ECF No. 44 at 3, 5-6; ECF No. 46-1 at 85-86, 88.) Even viewed in the light most favorable to plaintiff, a reasonable fact-finder could not conclude that plaintiff was disabled according to the ADA.

Neither would a reasonable fact-finder conclude that – based upon what it knew – the Port Authority could have regarded plaintiff as disabled. By plaintiff's own admission, his helper (Mr. Denalo) was only present because his position had to be filled in his absence and the

helper had to bid for a new job after plaintiff returned. (ECF No. 46-1 at 72-77; 46-3 at 7.)

Plaintiff stated that even with his helper, he had to split many of the original duties of his job that

he alleged caused him pain. (ECF No. 46-3 at 7-8.) Plaintiff's characterization of the situation

was not that of an accommodation, but a coincidence. Thus, plaintiff presented evidence that

works against his assertion that the Port Authority regarded him as disabled. Other than claiming

that he constantly complained to his employer about his pain, plaintiff never presented any other

evidence that would indicate that the Port Authority considered him to be disabled. As such, the

Port Authority is entitled to summary judgment as to this element of plaintiff's prima facie

showing.

Yet, even if this court assumes that plaintiff was disabled or regarded as disabled – as

argued by the Port Authority, plaintiff did not provide evidence sufficient to meet the third prong

of his prima facie showing. (ECF No. 40 at 9-15.) The third prong of the prima facie standard is

met when a plaintiff can demonstrate an adverse employment decision by his or her former

employer. *Colwell*, 602 F. 3d at 504. "'Adverse employment decisions in this context include

refusing to make reasonable accommodations for a plaintiff's disability.'" *Id.* (quoting *Williams*,

380 F. 3d at 761); 42 U.S.C. § 12112(b)(5)(A). This also includes "'the employer's reasonable

efforts to assist the employee and to communicate with the employee in good faith.'" *Id.*

(quoting *Mengine v. Runyon*, 114 F. 3d 415, 416 (3d Cir. 1997)).

Plaintiff claimed that he requested the assistance of a helper in order to perform his job of

wheel changer, but that no helper was provided by the Port Authority. (ECF No. 44 at 5.)

Plaintiff claimed that he had numerous conversations with the Port Authority about requiring

accommodations for his work conditions because of his neck and shoulder pain. (ECF No. 44 at

5.)  Plaintiff claimed that his physician informed the Port Authority that plaintiff required a helper.  (ECF No. 44 at 5.)

Plaintiff, however, admits that he ultimately refused to switch to other open positions that he could have performed without accommodation, such as that of garage attendant and vehicle cleaner.  (ECF No. 44 at 3, 5-6.)  When plaintiff allegedly could no longer perform the functions of his job, by his own testimony, he simply stopped without repercussions.  (ECF No. 46-1 at 89-91.)  His foreman told him not to do any work which caused him pain.  (ECF No. 46-1 at 89-91.)  Plaintiff testified that until the date of his termination, he was not made to do any work which caused him pain, which is an accommodation.  (ECF No. 46-1 at 89-91.)  Even if it was not the accommodation requested, and even if the Port Authority did not engage in an ideal interactive process to find accommodations for plaintiff, an accommodation was nonetheless provided. Simply because plaintiff did not receive what he requested – whether that was a light duty position with the hours he demanded, or the provision of a helper – that does not mean that the Port Authority's accommodation was not reasonable.  *See Stadtmiller v. UPMC Health Plan, Inc.*, 799 F. Supp. 2d 492, 509 (W.D. Pa. 2011)(*Aquart v. Ascension Health Info. Serv.,* No A–09–CA–804, 2011 WL 233587, at *6 (W.D.Tex. Jan. 24, 2011)* (quoting *EEOC v. Agro. Distrib., LLC,* 555 F.3d 462, 471 (5th Cir.2009)*)) ("'Not all requested accommodations are appropriate, and the ADA only 'provides a right to reasonable accommodation, not to the employee's preferred accommodation.'"")*.  The ADA requires no more.  *Id.*  The Port Authority is therefore entitled to summary judgment with respect to plaintiff's claim of failure to accommodate.

2.  <u>Hostile Work Environment</u>

A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [plaintiff] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4)

the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton v. Mental Health Ass'n of Se. Pa.*, 168 F. 3d 661, 667 (3d Cir. 1999). The working environment must have been objectively hostile or abusive, and the plaintiff must have perceived it as such. *Id.* The court must consider all the surrounding circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff claims to make out a prima facie case by citing to his alleged history of complaints of pain in his neck and shoulder while performing the essential functions of his job, by claiming that his supervisors and managers considered him a "slacker" and held him in a negative regard, by asserting that he repeatedly asked for accommodations, and by alleging that he was made not to perform aspects of his job which were beyond his ability due to pain. (ECF No. 44 at 7.) These allegations, however, fail to demonstrate anything approaching the severe and pervasive treatment that a hostile work environment claim requires. In fact, the abusive working environment of which plaintiff complains – that plaintiff was not made to perform the functions of his job that were beyond his pain threshold – sounds remarkably akin to an accommodation. Aside from a vague statement claiming that his supervisors and managers held him in a low regard and considered him a "slacker," there is no evidence provided of treatment which could be remotely characterized as severe or pervasive.

"'[S]imple teasing,' off-hand comments, and isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the 'terms and conditions of employment.'"

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (emphasis added).  The hostile work environment claim was not intended to be utilized as a tool for implementation of a "general civility code," and will "filter out complaints attacking 'the ordinary tribulations of the workplace. . . .'" *Id.* (quoting  B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 175 (1992)).  "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Id.*  Plaintiff's hostile work environment claim under the ADA does not meet this high standard.  The Port Authority is entitled to summary judgment with respect to plaintiff's claim of hostile work environment.

    3.  Retaliation

    According to the ADA, "'No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under the [ADA].'" *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F. 3d 751, 758 (3d Cir. 2004) (quoting 42 U.S.C. § 12203(a)).  "'Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA.'" *Id.* at 758-59 (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F. 3d 183, 188 (3d Cir. 2003)).

    A prima facie showing of retaliation under the ADA requires a plaintiff to demonstrate the existence of "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* at 759 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F. 3d 561, 567-68 (3d Cir. 2002)).  The analysis follows the shifting *McDonnell Douglas* framework.  *Id.* at 759 (citing *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973)).  Here, a plaintiff need not show that he or she was disabled according to the ADA; "a plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested."  *Id.* at 759 n.2.

Plaintiff claimed that he was terminated from his position in retaliation for requesting accommodations at work.  (ECF No. 44 at 10.)  He asserts that certain activities and privileges that he once enjoyed were prohibited or taken away, including a parking space he had always used in the past being taken from him, being informed that he could no longer read his newspaper on the job or sell snacks on the job in spite of co-workers allegedly continuing to do so, being given a truck in poor condition to make a "road call" in August 2007, being told that he could no longer receive over-time work, and being "humiliated" when asked in the presence of co-workers to take a random drug test in accordance with his LCA.  (ECF No. 46-1 at 91-94; ECF No. 46-3 at 8, 10-11.)  Plaintiff, however, provides no evidence beyond his own bald assertions to substantiate his claims and did not connect his termination and treatment prior to termination to his requests for accommodations.  Even when viewed in the light most favorable to plaintiff, the record is not sufficient to establish a genuine issue of material fact.  The Port Authority is therefore entitled to summary judgment with respect to his retaliation claim.

B.  *ADEA Claims*

1.  Age Discrimination

In his brief in opposition, plaintiff claims that he was discriminated against by the Port Authority due to his age, in violation of the ADEA.  (ECF No. 44 at 6.)  The Port Authority disputes this claim, arguing that it is entitled to judgment as a matter of law not only because plaintiff did not make out a proper prima facie showing, but also because plaintiff's repeated failure to pass drug screenings was a legitimate, nondiscriminatory grounds for termination.

(ECF No. 40 at 16-18.)  Plaintiff contends that the grounds for his termination were merely pretext.  (ECF No. 44 at 6.)

In cases involving allegedly intentional discrimination based upon age, "a plaintiff must show that his or her age 'actually motivated' or 'had a determinative influence on' [an] adverse employment decision." *Fasold v. Justice*, 409 F. 3d 178, 184 (3d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).  This burden can be met with direct evidence, or it may be demonstrated indirectly according to the established *McDonnell Douglas* framework.  *Id.* at 184 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under this framework, a plaintiff would need to make a prima facie showing that he or she "(1) was over forty years old at the time of the adverse employment decision; (2) is qualified for the position in question; (3) suffered from an adverse employment decision; and (4) that his employer replaced him with someone sufficiently younger to permit a reasonable inference of age discrimination."  *Id.* (citing *Potence v. Hazelton Area Sch. Dist.*, 357 F. 3d 366, 370 (3d Cir. 2004); *Anderson v. Consol. Rail Corp.*, 297 F. 3d 242, 249 (3d Cir. 2002)).

Plaintiff claims to meet the requirements of the prima facie showing, because he was fifty-five years of age at the time of his termination, he was qualified to work as a wheel changer, he was discharged, and he was replaced by a younger worker.  (ECF No. 44 at 6.)  Plaintiff further asserts that the Port Authority's proffered legitimate reason for terminating plaintiff – his third violation of the Port Authority's drug policies – was pretext, because the Port Authority had reason to believe that the drug screening results were invalid.  (ECF No. 44 at 6.)

Plaintiff,  however, does not explain why the Port Authority's belief or disbelief in the validity of the drug screening results was related to his age.  The burden of persuasion – "but for" causation – remains upon plaintiff throughout the burden shifting exercise in an ADEA

discrimination claim.  *Smith v. City of Allentown*, 589 F. 3d 684, 691 (3d Cir. 2009).

Plaintiff's evidence connecting his age to his termination – in any way – is so scant that no

reasonable fact-finder could find in plaintiff's favor, even viewing the evidence in the light most

favorable to plaintiff.  When asked at his deposition whether any actions had been taken against

plaintiff on account of his age, plaintiff himself stated, "I don't know."  (ECF No. 46-1 at 92.)  In

his deposition, it was plaintiff's contention that he was discriminated against based upon age

simply because he was the oldest man in his position.  (ECF No. 46-1 at 93.)  Aside from these

accusations, plaintiff has provided almost no evidence to connect his age to his termination and

rebut the Port Authority's proffered legitimate, nondiscriminatory reason for terminating

plaintiff.  This is insufficient, even viewing the evidence in the light most favorable to plaintiff,

and the Port Authority is entitled to summary judgment with respect to this claim.

    2.  <u>Hostile Work Environment</u>

A hostile work environment claim based upon age would require a prima facie showing

under the same standard used in Title VII cases.  *Slater v. Susquehanna Cnty.*, 465 F. App'x 132,

138 (3d Cir. 2012).  A plaintiff would need to demonstrate that his or her workplace was

"'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

pervasive to alter the conditions of . . . employment and create an abusive working

environment.'"  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

Such a prima facie showing would require proof "'(1) the employee suffered intentional

discrimination because of their [age]; (2) the discrimination was [severe and pervasive]; (3) the

discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally

affect a reasonable person of the same [age] in that position; and (5) the existence of *respondeat

superior* liability.'"  *Huston v. Proctor & Gamble Paper Prod. Co.*, 568 F. 3d 100, 104 (3d Cir.

2009)(quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001); *Jensen v. Potter*, 435 F. 3d 444, 449 n.3 (3d Cir. 2006) (overruled on other grounds) ("the Supreme Court's standard is 'severe *or* pervasive'" . . . "and the Supreme Court's word controls, so we use the severe or pervasive standard here.").

As with his hostile work environment claim under the ADA, plaintiff falls woefully short of providing evidence to this court that could be considered by any reasonable fact-finder to be extreme, discriminatory behavior under the ADEA. The minimal evidence provided by plaintiff in his response to the Port Authority's motion for summary judgment demonstrates no connection between plaintiff's age and any of the treatment he received – negative or otherwise – at the hands of the Port Authority or its staff. (ECF No. 7-8.) When asked at his deposition what he believed made his work environment hostile, plaintiff replied, "[m]e being injured and then coming back and requesting accommodation. Me constantly complaining about [sic] I wanted to get off that job, me telling them I'm gonna get reinjured if you don't take me off this job. My constant complaining about it." (ECF No. 46-1 at 94.) Plaintiff also testified that, in response to an alleged complaint that he was too old to be a wheel changer, a supervisor informed plaintiff that, "I don't care if you're 70, you're on the job and you're staying on the job." (ECF No. 46-1 at 92.) Even assuming that this statement was made, this is not the sort of severe and pervasive treatment contemplated by a hostile work environment claim under the ADEA. The Port Authority is entitled to summary judgment.

3. Retaliation

The antiretaliation provision of the ADEA mandates that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." *Fasold v. Justice*, 409 F. 3d 178, 188 n.13 (3d Cir. 2005) (citing 29 U.S.C. § 623(d)). In order to demonstrate such a violation of the ADEA, a plaintiff must make a prima facie showing "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." *Id.* (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F. 3d 561, 567-68 (3d Cir. 2002)). The analysis follows the shifting *McDonnell Douglas* framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

As with his ADA claim for retaliation, plaintiff claims that certain activities and privileges that he once enjoyed were prohibited or taken away because of his age, including a parking space he had always used in the past being taken from him, being informed that he could no longer read his newspaper on the job or sell snacks on the job in spite of co-workers allegedly continuing to do so, being given a truck in poor condition to make a "road call" in August 2007, being told that he could no longer receive over-time work, and being "humiliated" when asked in the presence of co-workers to take a random drug test in accordance with his LCA. (ECF No. 46-1 at 91-94; ECF No. 46-3 at 8, 10-11.) Plaintiff, however, provides no evidence beyond his own bald assertions to substantiate his claims or to connect his termination and treatment prior to termination to his age. Even when viewed in the light most favorable to plaintiff, this is not sufficient to established a genuine issue of material fact. The Port Authority is therefore entitled to summary judgment with respect to this claim.

**V.    CONCLUSION**

Based upon the foregoing discussion, plaintiff failed to provide sufficient evidence, when viewed in the light most favorable to him as the non-moving party, to allow the court to determine that he established a prima facie case for either failure to accommodate, hostile work environment, or retaliation, under the ADA, or for discrimination, hostile work environment, or retaliation under the ADEA.  Accordingly, the court will grant defendant's motion for summary judgment with respect to all claims made by plaintiff in his complaint (ECF No. 1). The court declines to exercise supplemental jurisdiction over plaintiff's claims arising under Pennsylvania law, and those claims are dismissed, without prejudice.  An appropriate order follows.

By the court,


*s/ Joy Flowers Conti*
Joy Flowers Conti
United States District Judge

Dated:  September  12, 2012